Slip Op. 13-47

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| _____ : | | |
| FOSHAN SHUNDE YONGJIAN | : | |
| HOUSEWARES & HARDWARE | : | |
| CO., LTD., and POLDER, INC. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | Before: Richard K. Eaton, Judge |
| | : | |
| Defendant, | : | Court No. 10-00059 |
| | : | |
| and | : | |
| | : | |
| HOME PRODUCTS INTERNATIONAL, | : | **PUBLIC VERSION** |
| INC., | : | |
| | : | |
| Defendant-Intervenor. | : | |
| _____ : | | |

OPINION and ORDER

[Plaintiffs' motion for judgment on the agency record is granted, and the matter is remanded to the Department of Commerce.]

Dated: April 8, 2013

*William E. Perry*, Dorsey & Whitney LLP, of Seattle, WA, argued for plaintiffs. With him on the brief were *Emily Lawson* and *Derek A. Bishop*.

*Michael D. Snyder*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for the defendant. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Rachael Wenthold Nimmo*, Senior Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington D.C.

*Frederick L. Ikenson,* Blank Rome LLP, of Washington D.C., argued for defendant-intervenor. With him on the brief was *Larry Hampel*.

Eaton, Judge:  Before the court is the Department of Commerce's (the "Department" or "Commerce") Final Results of Redetermination Pursuant to Remand, dated June 11, 2012 (ECF Dkt. No. 71) ("Remand Results").  On remand, Commerce was instructed to reconsider whether Foshan Shunde Yongjian Housewares and Hardware Co., Ltd. ("Foshan Shunde", "the company", or, collectively with jointly-represented plaintiff/importer Polder, Inc.,[1]  "plaintiffs") qualified for separate-rate status in connection with the antidumping duty order on Floor-Standing Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China ("PRC") and, if eligible, to determine the appropriate rate.  *Foshan Shunde Yongjian Housewares & Hardware Co., Ltd. v. United States*, 35 CIT ___, ___, Slip Op. 11-123, at 41–42 (2011) ("*Foshan Shunde I*").

In the Remand Results, Commerce determined that (1) Foshan Shunde was entitled to separate-rate status on the basis of newly submitted information, and (2) assigned a rate of 157.68%, applying adverse facts available ("AFA").  Plaintiffs and defendant-intervenor, Home Products International, Inc. ("HPI" or "defendant-intervenor"), filed comments to the Remand Results.

STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (2006).

---

[1]        Polder, Inc. is the importer of the subject merchandise.

DISCUSSION

I.   Background

This matter is before the court on plaintiffs' challenge to the Department's final results of

the fourth administrative review of the antidumping duty order on floor-standing metal-top ironing

tables and certain parts thereof from the PRC for the period of review ("POR") August 1, 2007

through July 31, 2008.  *See* Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof

from the PRC, 75 Fed. Reg. 3,201 (Dep't of Commerce Jan. 20, 2010), and the accompanying

Issues & Decision Memorandum ("Issues & Dec. Mem.") (collectively, the "Final Results").  In

the Final Results, Commerce "found that Foshun Shunde's 'unreliable and inconsistent' responses

to questionnaires concerning the company's factors of production and sales data warranted the

application of adverse facts available . . . to all of the company's questionnaire responses when

determining its dumping margin."  *Foshan Shunde I,* 35 CIT at ___, Slip Op. 11-123, at 3–4.

Based on this finding, Commerce applied AFA to Foshan Shunde's questionnaire responses

regarding the company's production and sales information, as well as to its submissions regarding

independence from the PRC government.  Commerce then determined that Foshan Shunde could

not demonstrate an entitlement to separate-rate status and assigned the PRC-wide rate of 157.68%.

*Id.* at ___, Slip Op. 11-123, at 4–5.

The court sustained Commerce's determination to apply AFA to Foshan Shunde's factors

of production and sales data, noting the "'pervasiveness of the inaccuracies' in Foshan Shunde's

questionnaire responses."  *Id.* at ___, Slip Op. 11-123, at 33 (citation omitted).  The court also held,

however, that because the Department made "no finding that Foshan Shunde failed to act to the

best of its ability in responding to the . . . separate-rate questionnaires" and "Commerce did not

notify" the company of deficiencies in its separate-rate questionnaire responses in accordance with

19 U.S.C. § 1677m(d), "Commerce's reliance on AFA to deny Foshan Shunde separate-rate

status" was unsupported by substantial evidence and contrary to law.  *Id.* at 40–41.

On remand the court instructed the Department to: (1) consider the record evidence

regarding Foshan Shunde's entitlement to a separate rate, including opening the record if it

contained insufficient information to make a determination as to Foshan Shunde's entitlement to

separate-rate status; and, (2) if the company is found to be entitled to a separate rate, to "determine

an appropriate dumping margin specific to Foshan Shunde, taking into consideration the

Department's determination, sustained here, to apply AFA to Foshan Shunde's factors of

production and sales data."  *Id.* at ___, Slip Op. 11-123, at 42.


II.    The Remand Results

Commerce made two determinations in the Remand Results, which was conducted under

protest.  Remand Results at 3 n.1.  The first, made solely on the basis of information solicited from

Foshan Shunde on remand, is that the company "is entitled to a separate rate."  Remand Results at

3–5.  No party challenges this determination and it is sustained.[2]

Commerce then assigned Foshan Shunde an individual rate of 157.68%.  Remand Results

at 1.  Commerce justified its use of AFA by reference to the court's holding in *Foshan Shunde I*

that "the application of AFA to all of Foshan Shunde's factors of production and sales information

is supported by substantial evidence and otherwise in accordance with law."  Remand Results at 5

(quoting *Foshan Shunde I*, 36 CIT at ___, Slip Op. 11-123, at 31).

---

[2]    Defendant and defendant-intervenor, however, reserved their objections to *Foshan Shunde I*'s ruling that AFA could not be applied to determine whether Foshan Shunde is entitled to a separate rate.

In finding that a rate of 157.68% was "both reliable and relevant," the Department first

argues that the rate was reliable because it was "an individually calculated rate for a cooperative

respondent in the investigation."  Remand Results at 8.  The Department continued that the

selected rate was corroborated as required by 19 U.S.C. § 1677e(c), because it "has been used

repeatedly as the rate assigned to the China-wide entity representing the rate for the industry [and]

nothing on the record . . . indicate[s] that the [rate] is uncharacteristic of the industry, or is

otherwise inappropriate."  Remand Results at 9.  In other words, the Department concluded that

the selected rate was corroborated based on its previous use and because there was no record

evidence indicating that the rate was aberrant.

Commerce further claimed to corroborate the selected rate by pointing to data derived

from imports of the subject merchandise into the United States during the POR ("Customs Data")

which "indicate that importers are paying this rate . . . and exporters subject to this rate are able to

sell ironing tables in substantial quantities to the United States."  Remand Results at 9.  Put another

way, Commerce argued that because the Customs Data showed that some market participants were

importing subject merchandise while being subject to the 157.68% rate, the selected rate reflected

Foshan Shunde's commercial reality.  *See, e.g.*, *Lifestyle Enter., Inc., v. United States*, 36 CIT ___,

___, 865 F. Supp. 2d 1284, 1290 (2012) (*Lifestyle II*) ("An AFA rate . . . should bear a rational

relationship to respondent's commercial reality.").

As part of its findings, Commerce rejected plaintiffs' argument that the Customs Data

contained too small a quantity of imports to reflect Foshan Shunde's commercial reality or the

commercial reality of the industry as a whole.  In doing so, the Department concluded that the

"quantity of exports at the selected AFA rate is [not] relevant for corroboration purposes."

Remand Results 15–16.[3]


III.    Discussion

    Plaintiffs object to the Remand Results, arguing that (1) by assigning Foshan Shunde a rate

that had originally been calculated for another respondent in a prior review the Department failed

to follow the court's instructions, and (2) that the 157.68% rate selected by Commerce is not

sufficiently corroborated.


    a.   Calculation of a Rate "Specific" to Foshan Shunde

    As an initial matter, plaintiffs' position that Commerce was required to undertake the

calculation of a rate 'anew' for Foshan Shunde stems from a misreading of the court's remand

order.  For plaintiffs, the court's instruction that Commerce "determine an appropriate dumping

margin *specific* to Foshan Shunde" required the Department to calculate a unique rate, specific to

Foshan Shunde, and "precluded the use of a dumping margin that was calculated for another

entity."  Pls.' Objections to Dep't of Commerce's Remand Redetermination 5 (ECF Dkt. No. 75)

("Pls.' Br.").  Thus, according to plaintiffs, Commerce was required to use the 2.37% rate

calculated for Foshan Shunde in the first administrative review or to create a rate using some

unspecified methodology.

---

    [3]      It is worth noting that Commerce makes no reference in the Remand Results to the
fact that the Customs Data contains information which appears to be specific to the export of
subject goods produced by Foshan Shunde during the POR.

This argument cannot be credited.  On remand, the court expressly instructed Commerce to "take[] into consideration the Department's determination, sustained here, to apply AFA to Foshan Shunde's factors of production and sales data." *Foshan Shunde I*, 36 CIT at ___, Slip Op. 11-123, at 42.  Therefore, the court anticipated the use of a reasonable AFA methodology by Commerce when determining the company's rate.  Nothing in the order indicated that when applying AFA, the Department was required to calculate a rate for Foshan Shunde or that it was prohibited from using any reasonable method for determining the company's rate.

In addition, contrary to plaintiffs' suggestion, there is nothing in the order that required Commerce to open the record and allow Foshan Shunde to submit additional information as to its inputs.  The company had the chance to place information on the record during the underlying review.  Foshan Shunde's decision not to fully cooperate with the Department during the review foreclosed that opportunity.

### b.  Corroboration

On remand, Commerce selected a rate calculated for a cooperating competitor of Foshan Shunde during the initial investigation.  A rate calculated in the final determination of an investigation may be appropriate "secondary information" which Commerce may use in assigning an AFA rate.  *See* Statement of Administrative Action Accompanying Uruguay Round Agreements Act, H.R. Doc. No. 103-316 at 870, *reprinted* in 1994 U.S.C.C.A.N. 4040, 4199 (1994) ("Secondary information is information derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under section 751 concerning the subject merchandise.") ("SAA"); *KYD, Inc. v. United States*, 607 F.3d 760, 765 (Fed. Cir. 2010) (describing secondary information as

information not obtained in the course of the subject investigation or review); *see, e.g.*, *Tianjin Magnesium Int'l Co. v. United States*, 35 CIT ___, ___, Slip. Op. 11-100, at 7–8 (2011) ("Here, the AFA rate of 111.73% was a weighted-average margin calculated for a cooperating respondent during the previous administrative review and thus, is secondary information."); *Washington Int'l Ins. Co. v. United States*, 33 CIT __, __, Slip. Op. 09-78, at 21–24 (2009) (observing that an AFA rate selected from the PRC-wide rate was secondary information); *Chia Far Indus. Factory Co. v. United States*, 28 CIT 1336, 1358–59, 343 F. Supp. 2d 1344, 1365–66 (2004) (noting that a rate calculated for another party in the initial investigation was secondary information); *Kompass Food Trading Int'l v. United States*, 24 CIT 678, 682 (2000) (treating a margin assigned to an individual respondent in the initial investigation as secondary information).

When Commerce relies on secondary information to select an AFA rate, it must, "to the extent practicable," corroborate that rate using "information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c). To support its selection, "Commerce must therefore demonstrate that the rate is reliable and relevant to the particular respondent" and "show that it used reliable facts that had some grounding in commercial reality." *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 36 CIT ___, ____, Slip. Op. 12-83, at 6–7 (2012) (citations and internal quotation marks omitted) (*Tianjin II*); *see also KYD*, 607 F.3d at 765 ("Before Commerce can rely on secondary information, it must establish that the 'secondary information to be used has probative value.'" (citation omitted)); *Gallant Ocean (Thai.) Co. v. United States*, 602 F.3d, 1319, 1323 (Fed. Cir. 2010) ("Substantial evidence requires Commerce to show some relationship between the AFA rate and the actual dumping margin."); *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("Congress[] . . . intended for an [AFA] rate to be a reasonably accurate estimate of the respondent's actual rate, albeit with

some built-in increase intended as a deterrent to non-compliance.").

Commerce's attempt to corroborate the rate self-referentially by indicating that the rate

was selected from a prior review and has been used as the all-China rate, however, is not supported

by substantial evidence.  Absent a lack of other reasonably available information "at their

disposal," Commerce is required to use independent sources to corroborate its secondary

information.  19 U.S.C. § 1677e(c).  Calculated dumping margins are not "independent sources" as

contemplated by the statute and the Department's regulations.  19 U.S.C. § 1677e(c); 19 C.F.R. §

351.308(d) (2008) ("Independent sources may include, but are not limited to, published price lists,

official import statistics and customs data, and information obtained from interested parties during

the instant investigation or review.").  Although the data that underlies a calculated rate may

constitute an independent source, calculated rates themselves are creations of the Department and,

thus, are not independent sources.  *See* SAA at 870 ("Independent sources may include, for

example, published price lists, official import statistics and customs data, and information

obtained from interested parties during the particular investigation or review."); *KYD*, 607 F.3d at

765.

As noted, Commerce need only corroborate its selected rate "to the extent practicable."

When doing so is not practicable, however, Commerce must explain why.  *See Essar Steel Ltd. v.*

*United States*, 36 CIT ___, ___, 880 F. Supp. 2d 1327, 1332 (2012); *e.g., Shandong Mach. Imp. &*

*Exp. Co. v. United States*, 33 CIT ___, ____, Slip. Op. 09-64, at 13–20 (2009) (quoting

Commerce's explanation, accepting it as to one determination, and rejecting it as to another

determination); *Washington Int'l Ins*, 33 CIT at __, Slip. Op. 09-78, at 21–24 (quoting but

rejecting Commerce's explanation); *Shandong Huarong Gen. Grp. Corp. v. United States*, 31 CIT

42, 46 (2007) (quoting Commerce's explanation).  Commerce has made no representation that

corroboration by independent sources is impracticable in this case.  Indeed, the Department has

relied on an independent source to corroborate its chosen rate, namely the Customs Data.  Thus, it

is clearly "practicable" for the Department to have used independent sources to corroborate the

underlying rate.

Further, that the Department has calculated a rate for another respondent in a prior segment

of the proceeding is not, standing alone, evidence supporting the selection of that rate for a

different respondent in a later review.[4]  A rate assigned for a different respondent several years

earlier, without more, is simply not probative of whether a selected rate is a "'reasonably accurate

estimate of [a] respondent's actual rate'" in the current review.  *Gallant Ocean*, 602 F.3d at 1323

(quoting *De Cecco*, 216 F.3d at 1032).  Moreover, where the Department selects a rate identical to

the entity-wide rate for a respondent entitled to a separate-rate, more is required than the mere

assertion that the rate is corroborated because it has been used as the entity-wide rate.  *See* Remand

Results at 9 ("As the selected AFA rate has been used repeatedly as the rate assigned to the

China-wide entity representing the rate for the industry, there is nothing on the record of this

review to indicate the selected AFA rate is uncharacteristic of the industry, or is otherwise

inappropriate.").  Normally, a lack of evidence does not constitute substantial evidence that a rate

is relevant to a particular respondent.

---

[4]        This is not a case where the *Rhone Poulenc* presumption that the highest prior
margin is probative applies.  *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990).
Not only does that presumption not necessarily "replace actual corroboration . . . . [T]he Federal
Circuit appears to restrict its use to situations where a respondent has not answered Commerce's
questionnaire at all, rather than when the questionnaire responses were found wanting for one
reason or another."  *Tianjin Mach. Imp. & Exp. Co. v. United States*, 35 CIT ___, ____, 752 F.
Supp. 2d 1336, 1348 (2011).  Here, Foshan Shunde responded to the Department's questionnaires.

Although Commerce's blanket assertion that the relevance of a rate can be corroborated by the rate's use in a prior review, or that it was employed as the China-wide rate, is flawed, the Department also sought to corroborate the selected rate based on the Customs Data.  Here, the Department is on firmer ground.  19 C.F.R. § 351.308(d) (defining "official import statistics and customs data" as exemplars of "independent sources").   The Department's reliance on this data, however, requires additional explanation.  First, during the review, plaintiff objected that the number of entries underlying the Customs Data was too small to corroborate a rate of 157.68%.

Here, the Customs Data consisted of a limited number of entries, typically of small value, from a limited number of producers.[5]  Commerce's only reply to plaintiff's objection was that the size of the sample is irrelevant for corroboration purposes.  Remand Results at 15–16 ("We disagree that the quantity of exports at the selected AFA rate is relevant for corroboration purposes, as there is no requirement that the selected source of AFA must be based upon a specified sales volume.").  In other words, the Remand Results do not meaningfully address whether the quantity of imports that underlie the Customs Data can adequately corroborate an AFA rate based on secondary information.  Second, plaintiff is correct that the Customs Data does not contain a field identifying the tariff provision under which the entries represented therein were imported, despite the indication in the Remand Results that the data reflects entries of subject merchandise.  *See* Remand Results at 9.

Contrary to the Department's position, the size of the data set relied upon may be relevant to whether an AFA rate is sufficiently corroborated and supported by substantial evidence.

---

[5]      The Customs Data covers [[          ]] entries made by [[    ]] producers.  Of those entries, [[      ]] appear to be for a value greater than [[                ]].

*Dongguan Sunrise Furniture, Co. v. United States*, Slip Op. 13-46, at 6 (2013) ("Here Commerce

has based [respondent's] rates on an impermissibly small percentage of sales."); *Lifestyle II*, 37

CIT at ___, 865 F. Supp. 2d at 1289 ("Selection of an AFA rate based on miniscule data will not

suffice."); *Lifestyle Enter., Inc., v. United States*, 37 CIT ___, ___, 844 F. Supp. 2d 1283, 1289

(2012) (*Lifestyle I*) ("Facts specific to a particular case may make transactions representing a small

percentage of sales inadequate corroboration."); *Tianjin Mach. Imp. & Exp. Co. v. United States*,

35 CIT ___, ____, 752 F. Supp. 2d 1336, 1352 (*Tianjin I*) (rejecting the use of a small number of

third party transactions as corroboration); *cf. Gallant Ocean*, 602 F.3d at 1324 ("Because

Commerce did not identify any relationship between the small number of unusually high dumping

transactions with [petitioner's] actual rate, those transactions cannot corroborate the adjusted

petition rate.").  Moreover, where the Department relies on Customs Data to support a rate, in

order to demonstrate relevance it must point to some record evidence indicating that the Customs

Data reflects imports under the subject merchandise's tariff heading.

     Commerce's determinations "must include 'an explanation of the basis for its

determination that addresses relevant arguments[] made by interested parties.'"  *NMB Sing. Ltd. v.

United States*, 557 F.3d 1316, 1320 (Fed. Cir. 2009) (citing 19 U.S.C. 1677f(i)(3)(A)).  Where the

Department has reached important conclusions that are not fully explained with reference to record

evidence, its conclusions are "not supported by substantial evidence" and remand is appropriate

for Commerce to "'explain its rationale . . . such that a court may follow and review its line of

analysis, its reasonable assumptions, and other relevant considerations.'"  *Clearon Corp. v. United

States*, 35 CIT __, __, Slip Op. 11-142, at 27–28 (2011) (quoting *Allegheny Ludlum Corp. v.

United States*, 29 CIT 157, 168, 358 F. Supp. 2d 1334, 1344 (2005)).  Accordingly, because the

Department has not explained why the size of the Customs Data is sufficient to corroborate the

selected rate or pointed to any record evidence demonstrating that the Customs Data covered

entries of the subject merchandise, its determination that the selected rate is corroborated, and that

the requirements of 19 U.S.C. § 1677e(c) have been met, is not supported by substantial evidence

and must be remanded for further explanation.  On remand, the Department must explain why the

quantity of imports underlying the Customs Data is sufficient to corroborate the selected rate or, if

it determines that the quantity is not sufficient standing alone, identify whether there are

"additional facts that make the small [quantity] less troubling." *Lifestyle II*, 37 CIT at ___, 865 F.

Supp. 2d at 1290.  The Department must also identify what record evidence, if any, indicates that

the Customs Data represents entries of the subject merchandise.

Finally, Commerce's decision also fails to indicate whether it is relying on the Customs

Data only generally or particularly on some specific entries contained in the data.[6]  If relied upon

directly and identified to the appropriate tariff provision, some entries might provide the necessary

"additional facts" required to corroborate a high AFA rate.  *Id.* at ___, 865 F. Supp. 2d at 1290; *see*

*Gallant Ocean*, 602 F.3d at 1324 (noting that a high AFA rate based on a small number of

petitioner's own sales during the POR may be supported by substantial evidence); *but see*

*Dongguan*, Slip Op. 13-46, at 7 (noting that additional corroboration may be required to support

very high rates).  The Remand Results themselves, however, make no mention of any particular

entries as a basis for the Department's reliance on the Customs Data for corroboration.

Accordingly, the court cannot determine whether the Department relied on that information in

---

[6]        [[      ]] entries are identified as sales of products manufactured by Foshan Shunde.
Non-Public Doc. 3.  Those entries have an aggregate value exceeding [[                    ]].  It is worth
noting that, if those entries are relied upon specifically, that reliance would entirely rebut
plaintiffs' argument that it is impossible for Foshan Shunde to import the subject merchandise at
the selected rate.

reaching its conclusion and, thus, cannot sustain the results on that basis.  *See Nan Ya Plastics*

*Corp. v. United States*, 37 CIT ___, ___, Slip Op. 13-18, at 10–11 (2013) (quoting *Burlington*

*Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962) ("The courts may not accept . . .

counsel's *post hoc* rationalizations for agency action; . . . an agency's discretionary order [must] be

upheld, if at all, on the same basis articulated in the order by the agency itself.")).


CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

ORDERED that plaintiffs' motion for judgment on the agency record is GRANTED, and

Commerce's Final Results are REMANDED; it is further

ORDERED that, on remand, Commerce shall issue a redetermination that complies in all

respects with this Opinion and Order, is based on determinations that are supported by substantial

record evidence, and is in all respects in accordance with law; it is further

ORDERED that the Department shall clarify its position as to why the Customs Data

represents a sufficiently large number of entries to corroborate the selected rate or otherwise

corroborate its selected rate in a manner supported by substantial evidence and in accordance with

law; it is further

ORDERED that should the Department continue to rely upon the Customs Data, it shall

explain with specificity why the Customs Data demonstrates that the selected rate is relevant to

Foshan Shunde and either identify record evidence indicating that the Customs Data represents

entries of the subject merchandise or reopen the record to place such additional evidence thereon;

it is further

ORDERED that the remand results shall be due on July 8, 2013; comments to the remand results shall be due thirty (30) days following filing of the remand results; and replies to such comments shall be due fifteen (15) days following filing of the comments.


                                                    /s/ Richard K. Eaton
                                                   Richard K. Eaton


Dated:          April 8, 2013
                New York, New York